Ira **JUSTICE**, Plaintiff,

v.

Robert **FINCH**, Secretary of Health, Education & Welfare (now Elliott Richardson), Defendant.

**Civ. A. No. 69–C–112–A.**

United States District Court,
W. D. Virginia,
at Abingdon.

Oct. 22, 1970.

Joseph W. Justice, Burke & Justice, Pikeville, Ky., W. Clyde Dennis, Grundy, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A., § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying claimant a period of disability and disability insurance benefits.

Claimant, 46, is a former coal mine cutting machine operator, with an eighth grade education. He is married and re- sides with his wife and five children. On October 16, 1967, claimant sustained a back injury while at work when caught in a slate fall. He had sustained a previous back injury in 1955. He was hospitalized following the 1967 injury and did not return to work thereafter. On May 9, 1968, claimant applied for a period of disability commencing October 16, 1967, and for disability insurance benefits under §§ 216(i) and 223 of the Social Security Act, as amended, 42 U.S. C.A. §§ 416(i) and 423 (Supp.1969). The Administration disallowed the application and claimant requested and was granted a hearing on February 6, 1969.

Medical reports submitted at the hearing were considered in detail by a Hearing Examiner. A report from the Grundy Hospital indicated that claimant was admitted to that facility on October 16, 1967, for the injury to his back. The examining physician, Dr. Ralph Hess, reported spasm and tenderness of claimant's lumbar paravertebral muscles. X-rays of the lumbar spine revealed an old compression fracture of L–1. Dr. Hess' diagnosis was: "contused back: Old compression fracture of L–1." While in the hospital, claimant was given Seconal and Demerol for pain and was discharged on October 29, 1967, with instruction for continued medication and return for a follow-up. He was readmitted to Grundy Hospital for back pains on December 13, 1967, at which time a cyst was also removed from his neck. Dr. Hess diagnosed claimant's ailment as "low back syndrome" and, after discharging him on December 22, 1967, instructed him to return to the outpatient clinic for follow-up treatment. Dr. Hess last saw claimant on May 8, 1968, at which time he described claimant's condition as "status quo", again prescribing continued medication and instructing claimant to return in one month for a follow-up.

On June 26, 1968, claimant underwent an orthopedic evaluation performed by Dr. Tillou Henderson, a Board certified orthopedic surgeon. Dr. Henderson reported finding some tenderness in the lumbar musculature generally, being a

little worse on the right side, questionably a little muscle spasm in the right lumbar musculature, and moderate guarding of motions of the lumbar spine with the patient allowing about 50% of normal motion in all directions. X-rays revealed an old compression fracture of L-1 "amounting to 50%." The spine appeared otherwise normal, or essentially so from T-3 to the sacrum. Dr. Henderson's impressions were as follows:

"This patient has a compression fracture which is probably somewhat unstable in the region of the spine which produces the most disability. It would be our opinion that no specific treatment is indicated. It is likely that he has reached maximum improvement. He is disabled for work requiring much bending, stooping or lifting."

In a letter to the Old Republic Insurance Company, August 24, 1968, Dr. Henderson opined that claimant had recovered from the injury of October 16, 1967, and, insofar as that particular injury was concerned, claimant was able to do his regular work. He further stated that: "It is apparent that this patient sustained a severe back injury in 1955 which produced permanent disability to a significant degree." In a letter to the Disability Determination Section dated October 18, 1968, Dr. Henderson reiterated his original impression that the condition of claimant's back was such that it would be "quite uncomfortable" for him to undertake employment requiring much bending, stooping or lifting.

A medical report from Dr. J. P. Sutherland, a general practitioner, indicated that he examined claimant on August 14, 1968. Claimant complained of shortness of breath, weakness, pain in the chest on exertion, dizziness and weak eyes, and pain and stiffness in the low back, with pain in his legs at night. Dr. Sutherland observed that claimant "walked stiffly." Physical examination indicated evidence of arteriosclerosis of the retinal vessels; blood pressure was 160/118; dry rubs and rales were heard in the lung fields. Examination of the spine and extremities revealed tenderness and spasms of the lumbar muscles. Chest X-rays revealed increased peribronchial markings, fine linear scarring in both lung fields, and an enlarged heart. X-ray of the lumbar spine showed old fractures of L-1 and L-2, with narrowing of the body of L-1. Dr. Sutherland's diagnoses were: (1) hypertensive cardio vascular disease with angina, class II to class III; (2) chronic lung disease; (3) obesity. Dr. Sutherland concluded: "This man is not able to do gainful, physical labor." In a report of contact dated November 12, 1968, Dr. Sutherland expressed the opinion that claimant's symptoms, especially the elevated blood pressure and shortness of breath, may be related to considerable weight gain.

On November 7, 1968, claimant underwent a consultative heart and lung evaluation conducted by Dr. Robert A. Abernathy at Clinch Valley Clinic Hospital. Physical examination revealed some spasm of the back muscles on the right side resulting in a slight C-shape curve to the spinal column with a convexity to the left. On bending forward, claimant leaned heavily on the right side. He was not able to extend very well or to twist to either side, but on bending toward the left side, the curvature in the lumbar spine was maintained and did not appear to straighten. Examination of the neck revealed that motion of the cervical spine was essentially normal. X-ray of the chest was essentially normal, the lateral view showing slight anterior thoracic spurring. The lungs were generally clear throughout to percussion and auscultation. Ventilatory studies showed that claimant appeared to have some obstructive component, but that it was not severe. An electrocardiogram was interpreted as normal. Claimant was walked 100 yards at a fairly rapid pace on level ground without evidence of dyspnea. Dr. Abernathy's impressions were: (1) Chronic bronchitis; (2) history suggestive of some asthma; (3) probable severe anxiety at the result of the injury one year ago; (4) refer to orthopedic's

comments (apparently Dr. Henderson's report, *supra*) concerning the fracture in the vertebrae; (5) mild essential hypertension, normal sized heart, regular sinus rhythm, compensated Class I–A.

The Hearing Examiner stated that he gave Dr. Abernathy's report "the greater weight" in view of the fact that his diagnoses were supported by clinical and laboratory findings. The Hearing Examiner concluded that claimant had probable severe anxiety resulting from his most recent injury, but that the credible evidence did not indicate that it significantly restricted claimant's functions. Claimant consistently asserted that his back pains restricted his functions to a more significant degree than that found by the Hearing Examiner. Regarding this, the Hearing Examiner states:

"He may well have pain because of the old compression fracture and muscle spasm, but (I) was less than persuaded that the claimant's pain is of the degree indicated by him. He is able to watch television, read, and he stated he went hunting in the fall of 1968."

The Hearing Examiner concluded that, because of his back condition and mild hypertension, claimant was precluded from doing heavy, arduous work involving repetitive lifting, bending or stooping. He further found, however, that claimant retained the residual functions to do light or sedentary work.

A vocational expert, Miss Hattie B. Spangler, reviewed the above medical reports and was present at the hearing. In response to a hypothetical question which assumed that claimant's impairments precluded him from other than sedentary work where claimant could sit and stand at his own pleasure, Miss Spangler testified (and the Hearing Examiner so found) that he could perform such jobs as those of a gateman, night watchman, soft drink bottling plant worker, bottle inspector, taxi cab driver, delivery truck driver, or assembly worker, and that such jobs exist in significant numbers. Regarding the last-mentioned occupation, she further stated:

"However, there would be a question in my mind as to whether he could do that work now, especially if he is nervous, because it is work that they have to produce at a rapid rate, meet production standards, which are set up by the company and it does require working at a rapid pace."

In response to a further hypothetical question which assumed that claimant's condition, complaints and ailments were of the degree of severity as testified to by claimant, Miss Spangler stated:

"Well, if his condition is severe as he has described it, he has this heart condition and this back trouble, I believe he stated he was extremely nervous, or was nervous, I think it would be very difficult for the man to carry out the duties of * * * such jobs as I have listed. * * * I don't feel that he would have the residual capacity with these impairments if they are that degree of severity to get on the job five days a week and work eight hours a day or whatever he is required to or set up and keep this up on a day-to-day basis."

Having found that claimant retained the residual capacity to do sedentary work, the Hearing Examiner concluded that claimant had failed to establish that he was under a "disability" as that term is defined in the Social Security Act.

In basing his opinion in great part on the report of Dr. Abernathy, the Examiner ignored the critical part of Dr. Abernathy's report: that part in which Dr. Abernathy referred to the report of Dr. Henderson, a Board certified orthopedic surgeon, which report found Justice "disabled for work requiring much bending, stooping, or lifting" and that he suffered permanent disability to "significant degree." The Examiner's conclusion that Justice is able to watch television, read, or go hunting on a mattress in the back of a bus, in no way indicates that Justice is able to engage in gainful employment. The evidence is uncontradicted that plaintiff tried to drive a cab after his

injury but was physically unable to retain the employment.

Claimant requested a review of the Hearing Examiner's decision, submitting with his request a report from Dr. Russell Meyers, a neurologist and neurosurgeon at the Highlands Clinic in Kentucky. Dr. Meyers performed a neurologic and orthopedic evaluation on March 17, 1969. His report indicated that claimant was tender over both paravertebral muscles, and over the L4–5 and L5–S1 interspaces. There was considerable spasm of the paravertebral muscles in the lumbar region, a complete loss of lumbar physiological curve and of the Sherringtonian reciprocal innervation. The ranges of motion of the trunk were limited in all directions. His trunk tilts forward 12–15 degrees. Sensory examination revealed a complete loss of tactile sensibility over the S1 dermatome of the right side and a fifty percent diminution of tactile and vibratory sensibility over the remainder of the right leg and foot. Passive orthopedic maneuvers imposed upon the lower extremities gave clear evidence of sciatic nerve hyperirritability on both sides. Lumbosacral X-rays revealed, in addition to the old compression fracture of L–1, minimal hypertrophic osteoarthritis of the centra of the lumbar region. Dr. Meyers' diagnosis was herniation of the intervertebral disc at the L5–S1 interspace with S1 radiculitis bilaterally, in addition to the residue of a previous fracture of L–1. In Dr. Meyers' opinion, claimant was in need of surgical intervention directed at removal of the herniated intervertebral disc; and, until and unless such surgery was implemented, he considered claimant "100% disabled * * * for the performance of his regular work." Dr. Meyers further felt that there was approximately a 65% prospect of job rehabilitation resulting from such surgery.

As it was believed that additional information was needed with respect to the nature and severity of claimant's orthopedic condition, the Appeals Council granted his request for review of the Hearing Examiner's decision and requested additional information. Claimant thus submitted to further examination by two Board certified physicians, Dr. Loyal K. Wilson, an orthopedic surgeon, and Dr. William F. Hillier, a neurological surgeon. Dr. Wilson's examination on June 11, 1969, showed that claimant's back was completely stiff, but that he had full range of motion of his neck, shoulders and arms. Examination of the legs showed that there was a full range of motion of all the joints, but that the straight leg raising test, the cross-leg test, and rotation test were all mildly positive on the right side. Dr. Wilson noted that claimant seemed to be somewhat weak, and that he had spasm of the back muscles which did not relax easily when he stood on either leg or laid down on his abdomen. X-rays revealed the old healed compression fracture of L–1. Dr. Wilson expressed the opinion that it was possible that, during that fracture, there was some injury to the cord which accounted for claimant's prolonged weakness and the mild unilateral signs. Dr. Hillier examined claimant on June 24, 1969. He reported that claimant appeared chronically as well as acutely ill; that he was extremely tender over the entire lumbar spine and over S–1 and S–2 spinous processes; that there was a good deal of muscle spasm in the paravertebral muscles when the patient stood up or attempted to stand up straight; and that claimant had a good deal of discomfort in both iliolumbar areas. Straight leg raising on the left was limited to 30 degrees; on the right: "the man can barely lift his heel from the examining table." Dorsiflexion and plantor flexion of the feet on the left side were well-performed; on the right there was a marked weakness of the toes. Sensation to pin, touch, and vibration was all diminished over the right leg. Dr. Hillier's impression was: Compression fracture, L–1, old; probable herniated intervertebral disc, central type, but more prevalent toward the right at L–5, S–1; appearing to be more in the right leg than in the left. He felt that claimant was "totally and complete-

ly disabled from any form of work." However, he recommended surgical removal of the herniated disc and felt that such surgery would enable claimant to return to gainful employment, although not to his former occupation. Without surgical intervention, Dr. Hillier considered claimant "permanently partially disabled."

Claimant meets the special earnings requirements of the Act. The only issue before this court is whether there was substantial evidence in the record to support the Secretary's decision that claimant was not entitled to a period of disability or to disability insurance benefits under the Act.

This court is of the opinion that the Secretary's decision should be reversed for the following reasons:

 First. The decision of the Appeals Council is not supported by substantial evidence because it fails to adequately evaluate the medical evidence submitted to it subsequent to the decision of the Hearing Examiner. See Mann v. Gardner, 380 F.2d 182 (5th Cir. 1967). The reports of Dr. Meyers and Dr. Hillier both indicated, apparently for the first time, the presence of a herniated intervertebral disc at the L5–S1 interspace. Both physicians felt claimant to be in need of surgical intervention, Dr. Hillier considering him to be "totally and completely disabled from any form of work" without surgery. Dr. Wilson reported that he found claimant's back to be completely stiff. Drs. Meyers, Wilson, and Hillier all reported that leg raising tests were positive on the right side. Dr. Hillier, who performed the most recent examination, stated that there was a good deal of muscle spasm in the paravertebral muscles when claimant stands up or attempts to stand up straight, and that claimant has a good deal of discomfort in both iliolumbar areas. Finally, Dr. Meyers and Dr. Hillier, both neurosurgeons, detected diminished tactile and vibratory sensibility in claimant's right leg.

Although the Appeals Council recited the above findings in its discussion of the medical evidence, a recitation of objective, clinical findings will seldom show, without more, the overall effect of these impairments on a particular individual. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). There was no attempt by the Appeals Council to tie in the latest diagnoses indicating a herniated disc with the subjective evidence of severe pain and discomfort upon even slight exertion. Nor was there any evaluation of the impact which a herniated disc would have upon claimant's residual capabilities. In short, the Appeals Council has failed to satisfactorily explain the effect of the most recently diagnosed impairment upon claimant's ability to be substantially gainfully employed, other than in the terms of the examining physicians, which are to the effect that plaintiff is totally disabled in his present condition.

Second. Neither the Hearing Examiner nor the vocational expert, Miss Spangler, had the benefit of the recent medical evidence which was before the Appeals Council. Yet, Miss Spangler predicated her statement that jobs were available to claimant upon the assumption that the Hearing Examiner were to find him capable of doing light, sedentary work. Expressing what was apparently her own opinion, Miss Spangler stated: "I have felt when I studied this case that if his condition was of a mild degree of severity that he could do sedentary work." The Appeals Council based its decision at least in part upon Miss Spangler's testimony, concluding that she " * * * believed that the claimant had the capacity to perform various light to sedentary jobs * * *." It is clear that claimant's ability to perform certain jobs was determined without reference to the most recent medical evidence which overwhelmingly compels the conclusion that claimant suffers a disability as that term is defined in the Social Security Act.

 Even without the benefit of the more recent evidence, the vocational ex-

pert expressed doubt as to claimant's ability to be gainfully employed. The Hearing Examiner's conclusion that claimant could perform such jobs as soft drink bottling plant worker, taxi cab driver, delivery truck driver, or assembly worker is at odds with even the earlier medical reports indicating claimant's inability to engage in work which required much bending, stooping or lifting. He gave only "minimal credence" to claimant's subjective evidence of back pain, but cited as reasons therefor only that claimant is able to read and watch television, and that he went hunting on one occasion two years ago.[1] There was no evidence whatsoever that claimant was malingering, and after reading the entire record, the court is unable to draw such inference.

Finally. While the latest medical reports indicate that claimant's back ailment may be surgically correctible, no finding as to that issue was made by either the Hearing Examiner or the Appeals Council, and neither predicated its conclusions on that fact. Rather, as noted hereinbefore, the Appeals Council appears to have attached little or no significance to the reports of Dr. Meyers and Dr. Hillier (a Board certified neurological surgeon), both of whom were of opinion that claimant was totally disabled without surgical intervention. Although the conclusions of physicians as to the ultimate issue of disability are not conclusive thereof, the Secretary is not entitled to ignore them altogether, particularly where, as here, they are supported by clinical findings. The diagnoses of claimant's herniated intervertebral disc explain and convincingly establish his claim that he has been unable to engage in substantial gainful employment since his injury of October 16, 1967. The Secretary's decision to the contrary is not only unsupported by substantial evidence, but is in direct conflict with unrefuted medical findings as to the se-

verity of claimant's back impairment, and must therefore be reversed.

An order is this day entered granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment. The date of onset of disability is fixed at October 16, 1967.

---

1. Claimant's testimony was to the effect that, while he did accompany some companions on a hunting trip, he remained in a bed on their bus while his companions were hunting.